UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

JOHN KNEIPP,
On behalf of Himself and all
Others Similarly Situated,

        Plaintiff,

v.                                        Case No. 17-CV-857

Re-vi Design, LLC,

        Defendant.

---

**DEFENDANTS BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION**

---

## I. INTRODUCTION

Plaintiffs concede that pursuant to 29 U.S.C. 207(g)(2), Re-Vi is permitted to compute overtime pay at 1.5 times the regular rate established for the type of work they were performing at the time the overtime was performed. Plaintiffs argue that Re-Vi had not so established these rates, despite providing no evidence to demonstrate this to be the case. Nor do plaintiffs argue or contend that no agreement existed between Re-Vi and its employees on how overtime rates were calculated. Because pay rates are set based upon employee's skill, background and experience in addition to the type of work performed, Plaintiffs argument for conditional certification falls short as the proposed class is overly broad, and not sufficiently similar such that class action is a superior means of resolving any disputes which may exist.

II.     ARGUMENT

1. **THERE IS NO REASONABLE BASIS TO SUGGEST THAT THE PLAINTIFFS ARE SIMILARLY SITUATED TO THE PROPOSED CLASS MEMBERS.**

While plaintiffs argue that only a modest showing is required to conditionally certify a class and provide the representative plaintiff an opportunity to send out notices, the information upon which they are relying does not provide a modest showing of any violation.

   a. **Methodology.**

Certification of a collective action class is analyzed through a two-step approach. The first step, called conditional certification, is generally completed prior to the commencement of any significant discovery. *Lynch v. United Services Auto. Ass'n*, 491 F.Supp.2d 357, 368 (S.D.N.Y.2007). Once a court conditionally certifies a collective action, it may then facilitate notice to all of the putative class members by approving a notice form. *Id.,* 491 F.Supp.2d at 367 (citing *Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165, 173, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)).  The second step in collective action certification generally arises only after discovery is completed, and only if it appears that some or all members of a conditionally certified class are not similarly situated. In that case, a defendant may move to challenge certification, at which point a court will conduct a more searching factual inquiry as to whether the class members are truly similarly situated. *Id.*

To satisfy the first stage of certification (conditional certification), the moving plaintiff must put forth evidence establishing a colorable basis for their claim that the putative class members were together victims of a single decision, policy, or plan.   *Severtson v. Phillips Beverage Co.,* 137 F.R.D. 264, 267 (D.Minn.1991)(Severtson I).  The plaintiff must show that there

is a factual basis beyond the mere allegations in their complaint for establishing a class. *Severtson I*,137 F.R.D. at 267; *Severtson v. Phillips Beverage Co.*, 141 F.R.D. 276, 278–79 (D. Minn.1992 (Severtson II). While the court is not required to make findings of fact with respect to contradictory evidence or determine credibility of the evidence presented, "some identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency." *Barron v. Henry County School System*, 242 F.Supp.2d 1096, 1103 (M.D.Ala.2003), citing *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 416 (D.Or.2002).

"[U]nsupported assertions of widespread violations are not sufficient to meet the Plaintiff's burden." See, *Freeman v. Wal–Mart Stores, Inc.*, 256 F.Supp.2d 941 (W.D.Ark.2003), citing *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir.1983); *H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D.Tex.1999). Neither the remedial purposes of the FLSA, nor the interests of judicial economy are promoted if the court is to overlook facts which would typically demonstrate that collective action is inappropriate. See, *Basco v. Wal–Mart Stores, Inc.*, 2004 WL 1497709 at *5 (E.D.La., July 2, 2004) ("To create a collective action class, including the cost associated with that when a Court is convinced that there is insufficient support for the same prior to certification would be an exercise in futility and wasted resources for all parties involved.")

### b. Plaintiff Has Not Established a Colorable Basis for Establishing a Class.

In the present case, the Plaintiff does not argue that there was no agreement between Re-Vi and its employees that overtime was to be calculated using the § 207(g)(2) exemption. Rather, Plaintiff contends that Re-Vi improperly applied and could not benefit from the alternate calculation method set forth in § 207(g)(2) method, because it did not establish bona

fide rates of pay based upon the type of work performed. There is simply no evidence to support the plaintiff's claim that Re-Vi failed to establish bona fide rates. It is undisputed that Re-Vi established separate rates for snow removal work and non-snow removal work with each individual employee. Non-snow removal work operated as the employee's base rate of pay and was also the rate used to determine payment of any applicable travel or "mobilization" time. This rate remained constant, unless the employee received a pay raise. Employees were also paid at a higher snow removal rate which was established by agreement between Re-Vi and the individual employee to activate the employee's snow removal rate for the year. Snow removal work was then paid at $2.00 per hour higher than the employee's base rate and this rate also remained constant. Individual employees could earn pay raises with respect to these established rates. With the exception of pay raises, these rates were consistent and applied on all work performed by Re-Vi, except when Re-Vi was required by law to establish alternate rates, because work was being performed on a prevailing wage project.

  Plaintiffs are essentially arguing that it is not permissible for Re-Vi to set rates that do not coincide with the prevailing wage rates for public construction projects for which prevailing wage laws apply, even though Re-Vi employees may perform similar tasks on private jobs as they would while working on these public projects. There is no law supporting the Plaintiff's position and thus, regardless of whether all favorable inferences are taken in favor of Plaintiff's position for purposes of this motion, plaintiff is unable to establish a violation of the FLSA in calculating overtime pursuant to 29. U.S.C. 207(g)(2).

  Re-Vi is free to set whatever rates it chooses for private projects, and has established rates for snow removal and non-snow removal work. Under the FLSA, employers and

employees are generally "free to establish [the] regular [non-overtime] rate at any point and in any manner they see fit…[a]s long as the minimum hourly rates established by Section 6 [of the FLSA] are respected." Walling v. Youngerman–Reynolds Hardwood Co., Inc., 325 U.S. 419, 424, 65 S.Ct. 1242, (1945).

There is a two (2) dollar per hour discrepancy between snow removal (higher wage) and non-snow removal work. Each of the pay stubs submitted in support of Plaintiff's Motion for conditional discovery support that bona fide rates were established for snow removal and non-snow removal work. Furthermore, distinguishing rates of pay based on the type of project rather than the type of work is not a violation of FLSA. Plaintiff's cited case, *Mathias v. Fire Protection Dist. #1*, 43 F. Supp. 2d 916, 920 (N.D. IL. 1999), demonstrates that it is permissible under the FLSA to pay employees overtime at one and a half times the lower of two pay rates if the employee is performing work for which that rate is established by agreement between the employer and employee.

In the present case, Plaintiff cannot refute that Re-Vi had established hourly rates for each employee, based upon longevity, experience, skill, etc., for both snow removal work and non-snow removal work. There was a $2.00 difference in these pay rates. The only time a different pay rate existed is when the pay rate was outside of the plaintiff's control in that the applicable project was a public construction project subject to Wisconsin's prevailing wage laws. The fact that Re-Vi had to alter its regular and established rate for employee's work on a

prevailing wage project to comply with State law does not refute that the original rate is bona fide, nor does it render Re-Vi's calculation of overtime pursuant to § 207(g)(2) impermissible.[1]

In those circumstances in which Re-Vi's employees are working on a prevailing wage project, they have in effect three different bona fide rates of pay: (1) non-snow removal work on private projects[2]; (2) snow removal work on private projects; (3) the applicable prevailing wage rate for public works project. While Plaintiffs contend that public construction work and private construction work do not constitute different types of work for purposes of 29 U.S.C. § 207(g)(2), this issue is a red herring. As set forth in *Allen v. Bd. of Pub. Educ. For Bibb Cty*, 49 F. 3d 1306, 1313, (11th Cir. 2007), 29 U.S.C. § 207(g)(2) "should not be construed as a requirement that different types of work be performed if different rates are paid." As discussed in *Allen*:

> Section 7 regulates hours. It was not created as a way to regulate an employee's compensation, nor was its purpose "to prescribe that an hourly wage be set at any particular level; it is its purpose to require that an hourly wage be set at some level and that it be scrupulously adhered to, with augmented payments for overtime work." *Id. Quoting Nunn's Battery & Elec. Co. v. Goldberg*, 298 F. 2d 516, 520 (5th Cir. 1962).

*Allen* also provides a clear example of this distinction which is directly refutes the Plaintiff's theory. In *Allen*, a bus driver claimed that the City violated the FLSA by paying two different rates for driving a bus depending on the type of route being driven and then calculating overtime based upon 1.5 times the blended "regular" rate under § 29 U.S.C. 207(e). *Id.* at 1309.

---

[1] Re-Vi is not conceding for purposes of this motion that there were no factual differences between the type of work performed at the different rates of pay at which Mr. Kneipp was paid, but rather for purposes of argument demonstrating that even if the work was similar or the same and paid at different rates for private projects compared to public projects, this wage distinction is of no consequence.
[2] Compensated travel time, pursuant to Re-Vi's custom and practice was also paid at the employees base or "non-snow removal rate.

The court rejected the plaintiff's argument and affirmed summary judgment as to this argument.³ Importantly, the court noted that Section 207(g)(2) delineates an alternative acceptable method to the blended rate calculation and that under that method (straight time method) "we do not believe that the language contained therein should not be construed as a requirement that different types of work be performed if different rates are paid." *Id.* at 1312.

In the present case, like the bus drivers in *Allen*, Plaintiff in some instances may have been compensated at different hourly rates for similar work when performing work at Re-Vi's standard non-snow removal rate for a private project and then at a higher prevailing wage rate for a public works project. As *Allen* illustrates, this is a permissible arrangement consistent with the long established principle that an employee and employer are "free to establish this regular rate at any point and in any manner they see fit." *Walling*, 325 U.S. at 424. *See also Parth v. Pomona Valley Hosp. Med. Ctr.*, 630 F.3d 794, 803 (9th Cir. 2010)(indicating a rate is "bona fide" if it is: (1) agreed to by the employee; (2) in place for a substantial period of time; and (3) equal to or in excess of the Act's minimum wage."). The principle of whether a rate is bona fide or not focuses on whether or not the rate changes subject to hours worked or is imposed unilaterally and not on whether different rates are established for similar work. *See Allen*, 49 F. 3d at 1312.

Whether or not Plaintiff Kneipp was paid the appropriate classification for the work performed in accordance with Wisconsin's prevailing wage laws for the work he was performing is an issue that is unique to Plaintiff and not suitable for a collective action. So long

---

³ The Court of appeals did reverse summary judgment as to some plaintiffs as their deposition testimony established an issue of fact as to whether they were unpaid for overtime hours worked, but this holding does not impact the holding at issue in the present case, that it is permissible to pay an employee at two different rates of pay for the same type of work so long as an appropriate method of calculating overtime is used. *Id.* 1312-13.

as Re-Vi stuck to the established rates as set forth above and paid its employees a minimum of one and half times the applicable rate during overtime hours, it has computed overtime pay in a lawful manner. Plaintiff has presented no evidence to establish that Re-Vi failed to adhere to this principle and therefore conditional certification should be denied.

      **c. Each of the Examples Set Forth by Plaintiff are Insufficient to Demonstrate a Common Violation.**

In support of his Motion for Conditional Certification, plaintiff relies upon one of his time records from November 14, 2016 to November 19, 2016 and the associated pay stub. These records fail to establish any violation. It is undisputed that Plaintiff was paid 6.75 hours of overtime, at one and half times his hourly base rate of 15.00 per hour or $22.50 per hour. The time records provided by plaintiff account for 3.40 hours of overtime, during which time on November 18, 2016, it is also undisputed that Mr. Kneipp was performing private project maintenance fall cleanup work and or associated travel at/from Indianhead golf course (Ho Dec. Exh. 1-2). There is, however, a non-included time detail report that establishes that Mr. Kneipp worked only 37.81 hours in the previous week. (Ellison Aff. Ex. 3). This means that Re-Vi overpaid Mr. Kneipp's overtime hours by nearly double for this time period. Nonetheless, Plaintiff contends that Re-Vi violated the FLSA, as it was required to utilize a blended rate calculation to determine the overtime rate during the week of November 14 to November 19, 2016, because Mr. Kneipp worked on a higher rate public project which was paid at the prevailing wage rate. (Pl.'s Br. at 5). Utilizing the $18.50 rate set forth by Plaintiff, Mr. Kneipp would have been set to receive $62.90 for the 3.40 hours of overtime worked. Instead, he received $151.88, which equates to an overtime rate of $44.67.

The remainder of Plaintiff's discussion of Mr. Kneipp's records and alleged violation centers on the issue of compensability of travel time.  Plaintiff argues that travel time must be compensated pursuant to the Portal to Portal Act, when the employer has by custom or practice made such time compensable and that if an employer fails to establish a bona fide travel rate, it cannot calculate overtime for travel work other than at the blended regular rate calculation. For the reasons set forth in Section B above, this argument should be rejected as this argument is erroneous as set forth in *Allen*. 49 F. 3d 1306, 1313.

Furthermore, the cited District Court opinions offered by Plaintiff fail to refute the analysis set forth in *Allen*.  *O'Brien v. Encotech Constr.*, 2004 WL 609798 *10 (N.D. IL. 2004) is plainly distinguishable from the present case, in which travel time that was compensated by Re-Vi's custom and practice was always paid at the employee's base rate, and turned on the fact that the rates were not set by Agreement between the employer and the employees and that some non-overtime travel time was paid at a higher rate.    Specifically, the court in *O'Brien* stated:

> The evidence indicates that defendants unilaterally imposed the rates, not that the rates were reached by agreement in advance of the work being performed. Even if, at some point in time, an understanding arguably existed, defendants fail to satisfy another requirement as well. The rate cannot be found to be a bona fide rate in that defendant compensated some nonovertime preparation, travel, and cleanup at the higher rates provided for in the applicable collective bargaining agreement. If the rates are not consistently paid for the same type of work, they are not bona fide rates.           29          C.F         .R.       §         778.419(b).

Plaintiff does not contest that there was an agreement between Re-Vi and Kneipp or other Re-Vi employees as to the applicable rates for travel time, but rather that the rates established were not bona fide, because some travel time such as reporting from Revi's shop to a small scale

project which required gathering tools or equipment were paid at the employee's base rate, while "mobilization" after clocking into a jobsite on a prevailing wage project was paid according to the prevailing wage. Plaintiff cannot demonstrate on a single time record or pay stub an instance in which non-overtime travel time to a jobsite from the Re-Vi shop was paid at anything other than the employee's base rate, which distinguishes this case from *O'Brien*. Under a different type of work (as demonstrated by *Allen*), public works projects, Re-Vi did not compensate travel time to off-site job's, but did compensate time after checking into the job site if an employee was required to leave the jobsite to obtain additional materials at the same prevailing wage rate. Again this policy demonstrates that Re-Vi set a bona fide "wage [] at some level and th[en] … scrupulously adhered to [that wage], with augmented payments for overtime work." *Nunn's Battery & Elec. Co. v. Goldberg*, 298 F. 2d 516, 520 (5th Cir. 1962).

Further, *Green v. Norwest Mortgage, Inc.*, involves the application of 29 CFR 778.30 concerning the application of payments for prizes to employees in the calculation of overtime and is therefore wholly inapplicable to the facts of the present case. 1989 U.S. Dist. Lexis 1712* 11-12 (N.D. IL. 1989).

There is no evidence to suggest that Re-Vi had a uniform custom or practice of paying for employee travel time to every job site. Instead, Re-Vi's custom or practice was to compensate for travel time at the employee's base non-snow removal rate, only when it was required for the employee to begin work at the Re-Vi Shop to collect tools that are not on an offsite job site and the employee would be utilizing a Re-Vi Vehicle to get to the jobsite. This was typically the case if the individual employee was assigned to work on smaller scale projects for which necessary equipment and tools were not present on site. When an employee did not

need such tools, etc, travel time to the jobsite was not compensated. This is reflected in the Plaintiff's own pay records. For example, on September 27, 2016, as well as October 5, 2016, John Kneipp clocked in on the job site at the City of Wausau Riverfront Project and did not receive any travel time for reporting from Re-Vi's shop to the job site. (Ellison Aff. Ex. 1). In comparison, there are numerous other entries which reflect "travel time" before appearing at the job site. These entries demonstrate why Mr. Kneipp's claim is unique. When mobilization time was required at a prevailing wage project, employees were required to clock in at the jobsite, at which point their time would begin to run and be compensated at the applicable prevailing wage. An example of this can be found on the Time Detail Report of Shawn A. Towne for work performed on June 18, 2015 and June 19, 2015. (Ellison Aff. Exh. 2). If an employee had other "shop time" work to perform unrelated to a prevailing wage project, they were compensated upon clocking into Re-Vi's shop and paid at their applicable base rate. If the employee then later clocked into a prevailing wage job, travel time from the shop to the prevailing wage job site was also compensated at the employee's base rate.

      If Mr. Kneipp was performing preliminary work for a prevailing wage job, the entries such as those set forth in Ellison Affidavit Exhibit 1 are problematic, because Re-Vi's time system would default to travel time when employees did not otherwise select a different activity. Because it is approximately a 6 minute drive from the Re-Vi headquarters to this jobsite, the many entries that Mr. Kneipp has for sometimes over an hour of travel time to this project do not provide a means for Re-Vi of knowing how this time was spent or what job duties were performed. While it is possible that this time was spent in preparation for the prevailing wage project work, that is not discernible from the time sheets and is a problem that

is unique to Mr. Kneipp. Mr. Kneipp's duties and the amount of time indicated as travel time spent are unique to him and again demonstrate that collective action is inappropriate. Examination of Attorney Ho's Declaration Exhibit 4, Exhibit 5, and Exhibit 6, the time detail reports for employee Nicholas Moen, Mary Koval and Zachary Nikolai, also demonstrate that Re-Vi did not compensate travel time to off-site jobs as a matter of custom. All of Nicholas Moen's timesheets reflect no travel time prior to clocking in or after clocking out from the offsite job. The same is true of Zachary Nikolai's timesheets submitted by Plaintiff. Mary Koval's timesheets (Ho. Dec. Ex. 5) also indicate that travel time was only paid when there was initial work required at the Re-Vi headquarters, such as those dates worked from November 23, 2015 to November 25, 2015. However, Ms. Koval's timesheets also clearly demonstrate that travel time to Applebee's for snow removal on December 1, 2015 was not compensated. Accordingly, Plaintiff's exhibits only demonstrate that John Kneipp's documented travel time for which he was compensated was consistently paid at the established base rate for the work he was performing, which is not a violation of the FLSA.

Because prevailing wage projects were larger offsite jobs, for which tools and equipment were maintained on location, employees were not compensated for travel to and from the worksite. They would, however, be compensated for time spent after clocking in at the worksite if they left the worksite to obtain additional materials. Because the prevailing wage project rate would act in place of the employee's base rate for these public construction projects, this "mobilization" time was accordingly compensated consistently at the prevailing wage rate.

These practices do not have a uniform effect on all employees as some employees may or may not have participated in offsite projects for which travel time was not compensated, and

furthermore, some employees would have never worked on a prevailing wage project at all. These are only some of the myriad of factual dissimilarities between individual employees which demonstrate why collective action is not feasible.

### d. Nicholas Moen's Records Do Not Demonstrate Any Violation.

Plaintiff has indicated Nicholas Moen as a similarly situated class member, based upon his earnings for the week of August 2-8, 2015. Plaintiff indicates that it is their understanding that, based upon their review of Nicholas Moen's direct deposit statement and Employee Time Detail report, Mr. Moen was not paid properly for his labor during this time period. (Ho Dec. Ex. 3-4) However, Re-Vi disputes this claim; though The Employee Time Detail Reports and direct deposit statements are not detailed enough to accurately depict the rounding systems utilized in the Re-Vi payment calculations, review of these documents shows that Mr. Moen was paid at a rate of $12.00 per hour, his base-rate pay, for non-prevailing wage projects. These projects included the Miron Construction project on August 4, the Aspirus Langlade Project and City of Wausau: Stewart Ave projects on August 5, the Aspirus Wausau Hospital project on August 6th, and the Ellis Stone Project on August 10. Mr. Moen was also paid his base-rate pay of $12.00 per hour for work done for Re-Vi Design on August 6 and August 8, which included training and/or meeting time as well as time spent on equipment and vehicle cleaning. (Ho Dec. Ex. 4, pg. 1-4) Mr. Moen was paid at a higher rate for prevailing wage projects. For the Kennedy Park project, Mr. Moen was paid at a rate of $16.69 per hour for work done on August 6 and 7; for the UWSP project, worked on from August 11-15, and the Miron Construction

project done on August 7, Mr. Moen was paid at a rate of $20.26 per hour. (Ho Dec. Ex. 4, pg. 2-6)

Mr. Moen's overtime was calculated based upon the work completed during overtime; thus, his 0.63 hours of overtime completed on August 8 were paid at a rate of $18.00 per hour, as these 0.63 fell during Mr. Moen's work for Re-Vi on equipment and vehicle cleaning, which was paid at a rate of $12.00 per hour and, thus, would be paid at an overtime rate of 1.5 times that base-rate, $18.00 per hour. These 0.63 hours of overtime were rounded in the pay system to 0.75 hours, as reflected in Mr. Moen's direct deposit statement. (Ho Dec. Ex 4, pg. 3; Ex 3, pg. 1) Mr. Moen's 21.13 hours of overtime worked between August 13-15 were spent working on the UWSP project, for which the rate of pay was $21.25 per hour and, thus, were paid at an overtime rate of $30.93 per hour. These 21.13 hours of overtime worked were rounded in the pay system to 21.25 hours, as reflected in Mr. Moen's direct deposit statement. (Ho Dec. Ex 4, pg. 5-6; Ex 3, pg. 1)

Because it is not possible without further investigation to determine exactly how Mr. Moen's overtime calculation was impaired by rounding in the accounting system, this cannot be utilized as evidence of a violation caused by design of a common plan. Again this type of error (if one exists) only demonstrates that such an error would be unique to the individual, and not sufficient to give rise to collective action.

    e. **Zachary Nicolai's records do not establish a violation.**

Plaintiff argues that Zachery Nicolai's pay records from July 19, 2015 to August 1, 2015 establish a miscalculation of overtime on the basis that he was paid two different

rates for performing the same type of work. However, during the time period in question, Mr. Nicolai received a pay raise and accordingly Plaintiff's arguments in this section should be disregarded. (Nowak Aff. ¶ 6, Exh. 2).

### f. Plaintiff is Precluded from Arguing on Reply that No Agreement Existed Between Re-Vi and Its Employees Concerning Rates of Pay and the Calculation of Overtime.

Because Plaintiff has narrowly framed the alleged failure to compute overtime as a violation premised on the fact that Re-Vi's payment of different wages for different types of projects involving similar work as removing the possibility of using the straight time method for calculating overtime pursuant to § 207(g)(2), plaintiff has failed to make even the modest showing required to illustrate a colorable violation. Further, Plaintiff cannot save its motion by raising new issues, such as whether or not Plaintiff and Re-Vi had reached an agreement to be compensated for overtime work based upon the straight time method under § 207(g)(2) in its reply brief. Innogenetics, N.V. v. Abbott Labs., No. 05-C-0575-C, 2006 WL 6068352, at *2 (W.D. Wis. Aug. 11, 2006), aff'd in part, 512 F.3d 1363 (Fed. Cir. 2008) (stating the Western District's preference to follow Seventh Circuit precedent which states that a reply brief is not the place to raise a new issue, as it deprives the opponent the opportunity to respond to the new issue and asks the court to aim at a moving target).

### III. Plaintiff's Proposed Notice and Statute of Limitations is not Appropriate

In the event this Court approves conditional certification, Plaintiff's proposed notice should not be allowed as it is currently written. To begin, the Plaintiff proposes an enormous

sixty (60) day time period for notice.  There is simply no justification for this long of a time period.  Employees would have more than ample time to review the notice and decide to opt in or not in fifteen (15) days.  At most, a thirty (30) day time period is more suitable and in line with common practice than the proposed time period.

Next, the description of the lawsuit is inappropriate as it misleads the individual receiving the notice into believing that it has already been determined that Re-Vi has miscalculated its overtime pay. The first paragraph of the section entitled "Description of the Lawsuit," should refrain from using the word "your" throughout that paragraph to avoid misleading the recipient of the notice that a violation has been found.  Use of the word "your" throughout that paragraph should be eliminated and no personal pronouns should be used. Instead, Plaintiff should not mention any personal pronouns or, when necessary, simply refer to a neutral term such as "an employee."  For example, the second sentence should indicate: "the lawsuit alleges that Re-Vi violated federal law by [mis]computing overtime pay" and the third sentence should indicate "For example, the [lawsuit alleges] that if [an employee] worked…" and so on.

Additionally, Plaintiff also attempts to mislead the notice recipient to believe that this notice is authorized and submitted by the Court, by opening the paragraph indicating that the notice is authorized by the Court.  Although Re-Vi explains later in the paragraph that this does not mean that the Court holds an opinion in relation to the allegations, that important disclaimer is buried in the paragraph.  Because the paragraph is entitled "Who is Sending The Notice," The first sentence should be the sentence indicating that the Plaintiff's attorneys are sending the notice. The next sentence should then indicate that the notice is authorized, but that

the authorization does not mean that the Court holds an opinion on the matter. The only reason to place the first sentence where it is an attempt to confuse the casual reader who may not read beyond the first sentence of the paragraph in believing that the Court has already approved the substance of the notice. Accordingly, this Court should require Plaintiff to revise the notice if it is approved.

Furthermore, the proposed class set forth in Plaintiff's brief is overly broad. Plaintiff requested from Re-Vi that it provide a list of all employees employed during the time period of November 13, 2014 to the present. However, while Re-Vi provided a response to this, in furnishing the list of employees it did not distinguish, and could not distinguish based on its software, between employees that worked at that time versus current employees, nor could it separate hourly-exempt employees that are salaried and, thus, would not be appropriate for a collective action. Again, there are a myriad of factors which make collective action inappropriate in this case, based on the uniqueness of each individual claim, whether or not individual employees were assigned to large-scale or small-scale projects, such that they were subject to payment of travel time to arrive to these projects or simply reported directly to the job site in their own private vehicles, etc. Accordingly, should this court decide that conditional certification is appropriate, the Plaintiff should be required to reduce the scope of the individuals to whom the notice may be sent and the notice should not be provided to salaried employees.

Plaintiffs suggest that, because the complaint alleges a willful violation of the FLSA, the three year statute of limitations should apply. However, Plaintiffs have set forth no evidence for a colorable claim that these violations were willful beyond the allegations in their complaint.

Accordingly, if this Court determines that conditional certification is appropriate, it should limit the proposed class to a two year time period. There is no evidence submitted with Plaintiff's motion that Re-Vi knew of any violation; Re-Vi maintains that its actions are lawful and compliant with the FLSA.

While Plaintiff contends that the class can be defined to exclude dissimilar class members, this is not likely to be true.  To begin, Plaintiff's overall premise that Re-Vi failed to establish separate bona fide rates is false and Plaintiff has produced no evidence to refute same. Second, given the large number of employees and the variety of different jobs to which they are assigned, excluding the irrelevant employees outside of the class would in fact be tedious, as demonstrated by the fact that under Plaintiff's misguided theory, any time an employee received a pay raise would under plaintiff's class be included initially and there pay records examined to determine that the difference in rates was in fact due to a pay raise instead of some attempt to pay arbitrary rates.   Plaintiff has provided no proof that Re-Vi's rates were not consistent, set for a substantial period of time, in excess of the minimum wage and paid at least time and half pursuant to 29 U.S.C. § 207(g)(2).  Accordingly, Plaintiff's motion for conditional certification should be denied.

## IV. CONCLUSION

For the reasons set forth above, this Court should deny the Plaintiff's Motion for Conditional Certification and dismiss the collective action allegations of Plaintiff's Complaint. Alternatively, if this Court finds that Conditional Certification is appropriate, it should enter an appropriate Order, consistent with the objections of Re-Vi set forth above, limiting the proposed

notice to a reasonable period of time, correcting the misleading verbiage contained therein and authorizing plaintiff to only send the notices to appropriately defined hourly employees and not all Re-Vi employees.

ELLISON & DAVID, LLP

Dated: June 14, 2018      /s/ *Keith F. Ellison*
Keith F. Ellison (State Bar No. 1017417)
Kurt F. Ellison (State Bar No. 1089940)
Attorneys for Re-Vi Design, LLC
630 Fourth Street
P.O. Box 1144
Wausau, WI 54402-1144
(715) 845-1151 / 845-1167 (FAX)
email: kfe@wedlaw.net