IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOHN KNEIPP, on behalf of himself and
all others similarly situated,

                      Plaintiffs,

v.

RE-VI DESIGN, LLC,

                      Defendant.

OPINION and ORDER

17-cv-857-slc

---

Plaintiff John Kneipp has brought this action under the Fair Labor Standards Act (FLSA) and Wisconsin wage laws on behalf of himself and similarly-situated employees of defendant Re-Vi Design, LLC. In his proposed FLSA collective action, Kneipp contends that defendant Re-Vi Design, LLC used an incorrect hourly rate to calculate overtime pay for its employees under the exemption in 29 U.S.C. § 207(g)(2) for employees performing two or more kinds of work.[1] Before the court is Kneipp's motion for conditional certification of a collective action under the FLSA. Dkt. 18. Because Kneipp has made the modest factual showing necessary for conditional certification, I am granting the motion and authorize distribution of Kneipp's proposed notice and opt-in form, dkt. 18, exhs. 1-2, subject to the revisions discussed below.

## ALLEGED FACTS

Defendant Re-Vi is a Wisconsin limited liability corporation located in Wausau, Wisconsin that performs landscaping, maintenance, and snow removal. During any given year,

---

[1] Kneipp also alleges that Re-Vi committed other violations of Wisconsin law, but those allegations are not relevant to the motion before the court.

Re-Vi employs 30 or more employees. Plaintiffs all are residents of Wisconsin who worked for Re-Vi on or after November 10, 2014.

Most of the time, Re-Vi paid its employees different wage rates for snow removal work and non-snow removal work, although it would occasionally pay its employees at the lower landscaping season wage rate for their snow removal work. Kneipp and other Re-Vi employees receive the same rate for all non-snow removal work, regardless of the specific tasks that they performed. However, if they were performing work on a "prevailing wage project" as part of a government contract, they would receive a higher rate than for the same work on a non-prevailing wage project.

During both the 2016 and 2017 construction seasons, Kneipp worked on a prevailing wage project during which he did landscaping work on or around bike paths and public sidewalks. For his landscaping work on or alongside a local street, Re-Vi paid Kneipp an hourly rate of either $18 or $29.06 per hour in 2016, and at an hourly rate of $15 per hour in 2017. By custom, Re-Vi also paid its employees for travel between the company shop and the job site, the last job site before the lunch break to the site for the lunch break, the site for the lunch break to the first job site after the lunch break, and the last job site back to the company shop.

Re-Vi had a uniform policy of computing overtime pay based on the rate for the type of work that the employee performed during the overtime hours worked, rather than the often-higher blended average wage rate earned by the employee over the course of the entire workweek. This practice resulted in its employees not being paid enough overtime pay.

**OPINION**

**I. Legal Standard**

Under § 216(b) of the FLSA, employees may bring a collective action on behalf of themselves and other "similarly situated" employees for an employer's failure to pay overtime or a minimum wage to employees who are covered by the statute. This court applies a two-part test to determine whether an FLSA claim may proceed as a collection action. *Bitner v. Wyndham Vacation Resorts, Inc.*, 301 F.R.D. 354, 357 (W.D. Wis. 2014); *Espenscheid v. DirectSat USA, LLC*, 2010 WL 2330309, *6 (W.D. Wis. Jun. 7, 2010); *Austin v. Cuna Mutual Insurance Society*, 232 F.R.D. 601, 605 (W.D. Wis. 2006). At the first stage, the question is whether the plaintiff has made a "modest factual showing" that he and potential class members were victims of a common policy or plan that violated the law. *Werner v. Waterstone Mortg. Corp.*, 2018 WL 813525, at *1 (W.D. Wis. Feb. 9, 2018); *De Leon v. Grade A Constr. Inc.*, 2017 WL 1957537, at *2-3 (W.D. Wis. May 11, 2017); *Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 628-29 (W.D. Wis. 2009). The inquiry focuses on "whether potential plaintiffs are sufficiently similar to believe a collective action will facilitate efficient resolution of a legal dispute involving claims which share common questions and common answers." *Holmes v. Sid's Sealants, LLC*, 2017 WL 5749684, at *2 (W.D. Wis. Nov. 28, 2017) (internal quotations omitted). The court does not adjudicate the merits of the case and factual disputes are resolved in favor of the plaintiff. Compared to the rigorous analysis required for class certification under Fed. R. Civ. P. 23, the standard for conditional certification is relatively liberal and "typically results" in conditional certification of a representative class. *De Leon*, 2017 WL 1957537, at *2-3. If this showing is made, the court conditionally certifies a class and authorizes notice to potential class members and the parties

conduct discovery. *Austin*, 232 F.R.D. at 605. The second step occurs at the close of discovery upon a motion for decertification from the defendant. At that point the court determines whether, in fact, the plaintiffs are similarly situated to those who have opted in. *Id.*

## II. Proposed Class

In his proposed collective action, Kneipp alleges that Re-Vi violated the FLSA by not paying him and other similarly-situated individuals all of the overtime pay that they are entitled to under the act. Under the FLSA, overtime pay for all hours worked over 40 must be computed using the employee's regular rate of pay. *See* 29 U.S.C. § 207(a)(1) (employers must pay their employees for overtime work "at a rate not less than one and one-half times the regular rate at which he is employed"). An employee's regular rate is calculated "by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109. When employees are paid two or more different hourly rates during the same workweek for different types of work, the employee's regular rate is the "weighted average" of the different rates (which is sometimes referred to as the "blended rate"), meaning that the employee's total earnings from all such rates are divided by the number of hours worked at all jobs. 29 C.F.R. § 778.115; *see also O'Brien v. Encotech Const.*, 2004 WL 609798, at *10 (N.D. Ill. Mar. 23, 2004) ("As to those employees who were paid two different nonovertime rates within the same workweek, the regular rate that is the basis for computing overtime pay should be the employee's weighted rate for nonovertime hours worked.").

However, 29 U.S.C. § 207(g)(2) provides a limited exception for computing overtime pay when employees are receiving different hourly rates for two or more different kinds of work and other specific conditions are met:

> . . . if, pursuant to an agreement or understanding arrived at between the employer and the employee before performance of the work, the amount paid to the employee for the number of hours worked by him in such workweek in excess of the maximum workweek applicable to such employee under such subsection--
>
> \* \* \*
>
> (2) in the case of an employee performing two or more kinds of work for which different hourly or piece rates have been established, is computed at rates not less than one and one-half times such bona fide rates applicable to the same work when performed during nonovertime hours
>
> \* \* \*
>
> and if (i) the employee's average hourly earnings for the workweek exclusive of payments described in paragraphs (1) through (7) of subsection (e) are not less than the minimum hourly rate required by applicable law, and (ii) extra overtime compensation is properly computed and paid on other forms of additional pay required to be included in computing the regular rate.

*See also* 29 C.F.R. § 778.419(a) ("Under section 7(g)(2) an employee who performs two or more different kinds of work, for which different straight time hourly rates are established, may agree with his employer in advance of the performance of the work that he will be paid during overtime hours at a rate not less than one and one-half times the hourly nonovertime rate established for the type of work he is performing during such overtime hours."). A bona fide rate for a particular kind of work is "equal to or greater than the applicable minimum rate therefor and [] is the rate actually paid for such work when performed during nonovertime hours." 29 C.F.R. § 778.419(b).

5

Therefore, for the exception in § 207(g)(2) to apply: (1) the employee must have performed two or more kinds of work; (2) the employer must have established a bona fide hourly rate for those different kinds of work; (3) the employee's compensation must be paid pursuant to an agreement or understanding arrived at between the employer and employee in advance of the performance of work; and (4) the employee's compensation must be computed at rates not less than one and one-half times such rates applicable to the same work when performed during non-overtime hours. *Mathias v. Addison Fire Prot. Dist. No. 1*, 43 F. Supp. 2d 916, 920-21 (N.D. Ill. 1999); *Richter v. Vill. of Oak Brooks, Ill.*, 2006 WL 1049745, at *3 (N.D. Ill. Apr. 18, 2006). Although an employee bears the burden of proving that he performed overtime work for which he was not properly compensated, the employer bears the burden to establish that an FLSA exception applies. *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 173 (7th Cir. 2011) (discussing burden of proof for FLSA exemptions).

Kneipp argues that Re-Vi incorrectly used the exception in §207(g)(2) to compute overtime pay for all of its employees because it paid its employees different pay rates based upon the *project* on which they performed work, rather than the *type of work* that they performed. *See Pennington v. G.H. Herrmann Funeral Homes, Inc.*, 2010 WL 3326815, at *4 (S.D. Ind. Aug. 23, 2010) (noting that FLSA and regulations do not define "different kinds of work," Seventh Circuit has not addressed question and there is little relevant case law addressing issue). He contends that with the exception of snow plowing work, the rates that Re-Vi used to compensate its employees depended on whether the employee worked on a prevailing wage project and had nothing to do with the kind of work that the employee performed.

As an example, Kneipp avers that he performed landscaping work for the Wausau Riverfront Project in 2015 and 2016 and was paid $29.06 an hour most of the time but $18 an hour some of the time. However, he received $15 an hour for the same type of landscaping work on other projects. Dkt. 20. His paycheck stub for the two-week period ending on November 25, 2016 shows that he was paid $15 an hour for 55 hours, $29.06 an hour for 25 hours, and $22.50 an hour for 6.75 overtime hours. Dkt. 21, exh. 2. The overtime hourly rate of $22.50 appears to be based on 1.5 times Kneipp's lower regular rate of $15 an hour. According to Kneipp, Re-Vi should have based the overtime rate on his weighted average hourly rate of $19.64 (blending the $15 and $29.06 hourly rates) rather than on the lower hourly rate of $15 because he did not perform two or more types of work during that pay period.

Kneipp also has identified three other employees whom Re-Vi treated similarly with respect to overtime calculations. Payroll records for Nicholas Moen during the period August 2-15, 2015 show that he was paid at three different regular rates and two different overtime rates for various projects on which he performed the same type of mobilization and maintenance work. Dkt. 21, exh. 3 at 1 and exh. 4. Similarly, payroll records for Mary Koval and Zachery Nicholai show that Re-Vi paid these employees different hourly rates for the same kind of work (snow removal in Koval's case and pruning work in Nicholai's case) and more than one overtime rate. *Id.*, exh. 3 at 2-5 and exhs. 5-6.

Therefore, Kneipp seeks conditional certification of the following class for the collective action:

> All Re-vi employees who, on or after November 10, 2014, during a workweek had his overtime pay computed using a straight time (or non-blended) rate, which was lower than the highest straight time wage rate he received during the workweek.

At this early stage, Kneipp includes in the class individuals employed during the three-year statute of limitations period for knowing or reckless violations of the statute.

### III.  Re-Vi's Challenges to Proposed Class

#### A.  Basis of FLSA Claim

Although Re-Vi raises several arguments related to whether Kneipp has a colorable basis for his FLSA claim, most of its arguments seem to be based on a misunderstanding of Kneipp's claim.  First, Re-Vi contends that there is no evidence that Re-Vi failed to establish bona fide rates for different types of work and points out that it paid employees separate rates for snow removal and non-snow removal.  Kneipp agrees that Re-Vi had separate bona fide rates for snow removal work and non-snow removal work, which are different types of work.  However, Kneipp is not challenging how Re-Vi calculated overtime for employees who performed snow removal and non-snow removal in the same pay period.  Rather, Kneipp argues that Re-Vi inappropriately calculated overtime under the statutory exception in cases in which employees received different hourly rates (one for public construction projects and one for private projects) for the same type of landscaping work in the same pay period.

Second, Re-Vi argues that there is no law supporting Kneipp's contention that Re-Vi cannot set rates that do not coincide with the prevailing rates for public construction projects. However, Kneipp is not arguing that Re-Vi cannot set different pay rates for the same type of work.  His argument is that Re-Vi cannot take advantage of the exception in § 207(g)(2) in calculating overtime for employees being paid those two rates for the same type of work.  Re-Vi does not say that Kneipp was performing two different kinds of work when he was paid one

hourly rate for private projects and another hourly rate for public projects. In fact, it states that "[p]laintiff in some instances may have been compensated at different hourly rates for similar work when performing work at Re-Vi's standard non-snow-removal rate for a private project and then at a higher prevailing wage rate for a public works project." Dkt. 22 at 7.

Third, Re-Vi cites *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1312 (11th Cir. 2007), for the proposition that § 207(g)(2) should not be construed as a requirement that different types of work be performed if different rates are paid. Re-Vi is correct but it misses the point. In *Allen*, the plaintiff challenged his employer's practice of calculating overtime using a "blending" of the different rates of pay that he received for driving different bus routes. *Id.* at 1311. The employer in that case did not use the method described in § 207(g)(2). *Id.* After reviewing various sections of the FLSA and its regulations, the court of appeals rejected plaintiff's argument that a blended rate is only permitted if the employee is engaged in two or more different types of work. *Id.* Although the plaintiff in *Allen* cited § 207(g)(2) in support of his argument, the court noted that § 207(g)(2) "alerts employers to an acceptable alternative method of calculating overtime for employees who are paid at more than one rate" and "we do not believe that the language contained therein should be construed as a requirement that different types of work be performed if different rates are paid." *Id.* at 1312. Unlike the plaintiff in *Allen*, Kneipp is not saying that he must have been performing two different kinds of work because he received two different pay rates or that he cannot be paid different rates for the same type of work. His claim is that Re-Vi cannot take advantage of the alternative method of calculating overtime in § 207(g)(2) if it is paying its employees two different rates for performing the same kind of work.

9

Finally, Re-Vi argues that Kneipp cannot "illustrate a colorable violation" of the FLSA because he has not made even a modest showing that Re-Vi failed to reach an agreement with its employees about their compensation to satisfy the third requirement of the exemption in § 207(g)(2). There are a few problems with this argument. Although Kneipp must prove that he and other employees performed overtime work for which they were not properly compensated, Re-Vi bears the burden to establish that it met all of the requirements of the statutory exception for calculating overtime. At this point, it is sufficient that Kneipp has presented some evidence showing that Re-Vi relied on the exception in cases in which employees were not performing two or more different kinds of work—a practice that would violate the first requirement of the exception. It is unnecessary for Kneipp to show that Re-Vi also may have violated additional requirements of the exception. More importantly, as discussed further below, the relevant consideration for conditional certification is not whether Re-Vi met the requirements of § 207(g)(2), but rather whether that determination can be made on a class-wide basis.

## B. Similarly Situated Class Members

Re-Vi challenges Kneipp's allegation that other employees were treated similarly to him with respect to overtime pay when they performed similar work at different pay rates. As Re-Vi points out, the payroll records for Moen, Koval, and Nicholai do not make clear what pay rate those employees received for what type of work. However, the fact that Re-Vi paid these employees different overtime rates instead of using a blended or weighted overtime rate for what appears to be the same kind of work suggests that the company had a common policy of using the exception in § 207(g)(2) to calculate overtime.

Re-Vi also argues that there are numerous dissimilarities among the employees that make a collective action infeasible. It points out that unlike Kneipp, not all employees worked on prevailing wage rate projects or were paid mobilization and travel time, and some received pay increases that resulted in them receiving different pay rates during a pay period. Although these issues may affect how much overtime pay an employee is entitled to and may be a consideration in determining whether the employee was performing two or more different kinds of work, they do not necessarily prevent conditional certification of a collective action. Some differences may be accounted for with subclasses, and others will have no effect until the calculation of damages. Moreover, the question whether certain tasks, including travel or mobilization time, are the same "kind of work" can be addressed on a class-wide basis. Therefore, contrary to Re-Vi's contention, the possibility that its overtime payment practices did not have a uniform effect on all employees does not make a collective action infeasible.

If following further discovery it becomes clear that Kneipp cannot proceed on a collective action with respect to his FLSA claim, Re-Vi has the option of filing a motion for decertification. *Bitner v. Wyndham Vacation Resorts, Inc.*, 301 F.R.D. 354, 359 (W.D. Wis. 2014) ("[D]etermining whether plaintiffs actually are similarly situated would require making factual findings and is, therefore, a question best left to the decertification stage."). However, at this point, I am satisfied that Kneipp has met his burden of showing "modest" proof that some factual nexus connects him to other potential plaintiffs and there are common questions with common answers about whether Re-Vi had a common policy or practice of calculating overtime that violated the law. *See Lewis v. Epic Sys. Corp.*, 2016 WL 5947353, at *1 (W.D. Wis. Oct. 13, 2016) (discussing modest showing required). Therefore, I will conditionally certify Kneipp's

proposed collective action as to the claim alleged in his amended complaint and allow him to notify potential members of the class.

IV. Notice

With respect to the notice, Re-Vi objects to the 60-day opt in period proposed by Kneipp and argues that 15 to 30 days provides ample time for potential class members to respond. However, as Kneipp points out, this court regularly sets a 60-day opt in period. *E.g.*, . Absent a good reason for changing its standard practice, I will approve the 60-day opt in period proposed by Kneipp.

Re-Vi contends that the use of "your" in the section of the notice entitled "Description of the Lawsuit" suggests that the court already has determined that Re-Vi miscalculated the potential class member's overtime pay. Dkt. 18, exh. 1. I agree that the use of "your" in the first and third paragraphs of that section of the notice may be misleading. Therefore, I direct Kneipp to use the following revised language in that section of the notice:

> A lawsuit has been brought by John Kneipp ("Plaintiffs") against Re-vi Design in the United States District Court for the Western District of Wisconsin (Case No. 17CV857). The lawsuit alleges Re-vi violated federal law by computing overtime pay using the rate for the type of work performed during overtime hours worked. For example, if an employee worked at a job with a pay rate of $15 per hour during his or her first 40 hours worked, and at a job with a pay rate of $10 per hour for his or her final 10 hours worked, the employee earned a total of $700 in straight time pay for 50 hours worked, so that the average straight time wage rate for the week is $14 per hour. Plaintiffs contend that in this scenario Re-vi would normally pay the employee $15 per overtime hour worked (1.5 times the hourly pay rate of $10 per hour); but should have paid the employee $21 per overtime hour worked (or 1.5 times the $14).

> It is okay if you do not recall how Re-vi computed your overtime pay. Once you opt into the lawsuit, counsel for the Plaintiffs can request from Re-vi your time and payroll records, which may be used to determine whether Re-vi lawfully computed your overtime pay.
>
> The Plaintiffs and the Defendants disagree on whether Re-vi's methods for computing overtime pay violated the FLSA. This is a determination that must still be made by the Court.

Re-Vi also argues that the following line in the section entitled "Who is Sending the Notice" implies that the court has endorsed this lawsuit: "This Notice is authorized by the United States District Court for the Western District of Wisconsin." Although the statement is accurate, the court of appeals has cautioned courts to be "scrupulous" in exercising their discretionary authority over the notice-giving process, instructing courts to respect judicial neutrality and "take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffmann-La Roche*, 493 U.S. at 174. Therefore, I will instruct Kneipp to revise this section of the notice to read:

> We are the lawyers representing Plaintiffs and other potential class members who timely consent to join this lawsuit. We are from The Previant Law Firm, S.C. We prepared and sent this Notice to you. This Notice is authorized by the United States District Court for the Western District of Wisconsin. Although the judge in this case allowed us to send you this Notice, the judge has expressed no opinion about Plaintiffs' claims, Re-vi's defenses, or whether the Plaintiffs or any other similarly situated employees are entitled to recover any monies in this action.

Re-Vi contends that the proposed class is overly broad. It asks that the individuals to be notified not include salaried employees, and Kneipp agrees. Therefore, I will amend the proposed class definition to include only hourly employees. Because the notice already states that it is being sent to "hourly employees," there is no need to revise it. In addition, the parties

dispute whether the pertinent time period for the class is two or three years. The FLSA extends the statute of limitations from two years to three years for willful violations. 29 U.S.C. § 255(a). Although Re-Vi contends that Kneipp has presented no evidence showing that he has a colorable claim for a willful violation, I agree with Kneipp that this issue is premature. *See Bessy v. Per Mar Sec. & Research Corp.*, 2018 WL 1583297, at *5 (W.D. Wis. Mar. 30, 2018) (finding same).

### ORDER

IT IS ORDERED that

(1) Plaintiff John Kneipp's motion for conditional certification, dkt. 18, is GRANTED. The court conditionally certifies the following collective action:

> All hourly Re-vi employees who, on or after November 10, 2014, during a workweek had his overtime pay computed using a straight time (or non-blended) rate, which was lower than the highest straight time wage rate he received during the workweek.

(2) On or before September 5, 2018, defendant shall produce to plaintiff an electronic list of names and addresses of all employees who fall within the scope of the collective action.

(3) On or before September 14, 2018, plaintiff's counsel is directed to mail the notice as revised by this order to the putative members of the collective action. Those individuals will have 60 days from the date of mailing to opt-in to the collective action.

Entered this 21st day of August, 2018.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge