UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

JOHN KNEIPP,
On behalf of Himself and all
Others Similarly Situated,

      Plaintiff,

v.                                                                    Case No. 17-CV-857

Re-vi Design, LLC,

      Defendant.

## DEFENDANT RE-VI DESIGN, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR DECERTITFICATION

## INTRODUCTION

Because Plaintiffs are the party seeking to maintain certification, they bear the burden of "demonstrating the continued propriety of maintaining the class action." *Farmer v. DirectSat USA, LLC*, No. 08 CV 3962, 2013 WL 2457956, at * 2 (N.D. Ill. June 6, 2013)(quoting *Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 419 (N.D. Ill. 2003)).  When considering a motion to decertify a collective action, the Court utilizes a rigorous inquiry into whether collective adjudication is appropriate. *Camilotes v. Resurrection Health Care Corp.*, 286 F.R.D. 339, 346 (N.D. Ill. 2012).  Applying this standard to the present case, Plaintiffs have failed to meet their burden of demonstrating the continued propriety of maintaining the class action in this case.  Therefore, the conditionally certified class should be decertified.

As discussed in further detail below, the record demonstrates that this matter is not appropriate for collective resolution and that the lone named plaintiff is not similarly situated to the putative class members.

## METHODOLOGY

The certification process for a collective action under the FLSA is a two-step process. *Viveros v. VPP Grp., LLC*, No. 12-CV-129-BBC, 2013 WL 3733388 at  3 (W.D. Wis. July 15, 2013). The first step, conditional certification, requires the plaintiff to make only a modest showing that they are similarly situated to potential class members and that they all were victims of a common policy that violated the law.  *Id*. It is undisputed that a class was conditionally certified in this case. (ECF #27).

Step two of the certification process under the FLSA occurs after discovery has been conducted and on a motion for decertification by the defendant.  *Viveros*, WL 3733388 at  3.  The Court applies a more stringent standard in making a determination for certification of a class during the second step of the process. *Camilotes*, 286 F.R.D. 339, 345 (N.D. Ill. 2012); *Allen v. City of Chi.*, No. 10 C 3183, 2014 WL 5461856, at *2 (N.D. Ill. Oct. 22, 2014). At the second step, the court determines whether putative class members are in fact similarly situated to those who have opted in."  *Viveros*, WL 3733388 at  3.  In analyzing a motion for decertification, the court considers "(1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns." *Mielke v Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004).

The burden is on the plaintiff to provide evidence to show "the continued propriety of maintaining the class action." *Farmer*, 2013 WL 2457956, at *2 (quoting *Ellis*, 217 F.R.D. at 419). If plaintiff fails to meet its burden and demonstrate that the putative class members are similarly situated, the court decertifies the collective action. *Bittner v. Wyndham Vacation Resorts*, *Inc.*,301 F.R.D. 354, 358 (W.D. Wis. 2014). The named plaintiff would then be able to pursue his claim individually until its resolution.

In addition to the considerations set forth in *Viveros*, courts evaluating whether to maintain a proposed FLSA collective class must also consider whether the proposed collective action satisfies the requirements set forth in Rule 23of the Federal Rules of Civil Procedure. *Espenscheid v. DirectSat USA, LLC,* 705 F.3d 770, 772 (7th Cir. 2013). While noticing some subtle differences in the terminology used, the Seventh Circuit noted that the case law "has largely merged the standards," and that there was "no good reason to have different standards for certification" for class actions vs. FLSA collective actions. *Id.* at 772.  Accordingly, courts in the Seventh Circuit have applied the requirements of Rule 23 to FLSA collective actions. *Viveros*, 2013 WL 3733388 at *4; *see also Pietrzycki v. Heights Tower Service, Inc.*, 197 F. Supp. 3d 1007, 1013-14 (N.D. Ill. 2016)(explaining "when a court is deciding whether to certify a collective action and a class action in one lawsuit, the court treats them as 'a single class action' and applies 'the Rule 23 standards'"(quoting *Sanchez v. Roka Akor Chicago LLC*, 2015 WL 74668 at *5 (N.D. Ill. 2016); *Alvarez v. City of Chi.*, 605 F.3d 445, 449 (7th Cir. 2010)(analyzing commonality and predominance when considering certification of a collective FLSA class).

<u>**ARGUMENT**</u>

**I.      Plaintiff has Failed to Present Any Evidence Demonstrating A Violation of Law.**

Re-Vi does not concede that all individuals who worked on a prevailing wage project during a given week that also worked at a lower rate during a work week failed to perform "different types of work" for purposes of 29 U.S.C. § 207(g)(2).  However, Re-Vi simultaneously asserts that even if its employees performed identical tasks on both a prevailing and non-prevailing wage rate job, this does not demonstrate that those two rates were not "bona fide" rates for purposes of 29 U.S.C. 207(g)(2).  Section 7 of the FLSA is not a means of regulating employee compensation as set forth in *Allen v. Bd. Of Pub. Educ. For Bibb Cty,* 49 F.3d 1306, 1313 (11th Cir. 2007).  While Re-Vi understands that *Allen* involved a separate legal determination, its interpretation of 207(g)(2) is nonetheless instructive and should be adopted by this Court.  Plaintiff has presented no case law interpreting 207(g)(2)'s language that different "types of work" means differing tasks as opposed to differing circumstances in which the work is performed.    *Allen,* as well as *Parth v. Pomona Valley Hosp. Med. Ctr.,* 630 F.3d 794, 803(9th Cir. 2010)(indicating a rate is "bona fide" if it is: (1) agreed to by the employee; (2) in place for a substantial period of time; and (3) equal to or in excess of the Act's minimum wage."), while not from the 7th Circuit, nonetheless provide guidance on this interpretation, which is absent from 7th Circuit precedent.

The interpretation that different types of work means a particular task or the application of a specific skill as opposed to a category of work agreed upon between the employer and the employee would run contrary to the purpose of Section 7 of the FLSA by regulating the manner in which employees are compensated and requiring employer's to engage in an impossible determination of what types of work tasks are sufficiently dissimilar to constitute a different type

of work.  There is no clear guidance from the 7th Circuit as to the meaning of "different types of work." *Pennington v. G.H. Herrmann Funeral Homes, Inc.*, No. 1:09-CV-390-RLY-DML, 2010 WL 3326815, at *4 (S.D. Ind. Aug. 23, 2010) ("Neither the FLSA nor its regulations define the term 'different kinds of work.' In addition, there is little case law on the matter, and it appears to be a question of first impression in the Seventh Circuit.").

Re-Vi believes that the appropriate interpretation of "different types of work" is, consistent with *Allen*'s interpretation, does not require that an employee perform different ***tasks***. It is also the position and interpretation of the Wisconsin Department of Workforce Development as relayed to defense counsel by Elizabeth Barroilhet, Section Chief of the Labor Standards Equal Rights Division. (Ellison Dec., ¶2-4)  Accordingly, this would the interpretation offered and relied upon by employers through the State of Wisconsin consulting with the agency tasked with enforcing labor standards for the State of Wisconsin.  While Re-Vi understands that such a determination or belief by Wisconsin Department of Workforce Development is not binding upon this Court, it, at a minimum, demonstrates that Re-Vi acted in good faith and could not have committed a willful violation of the FLSA based on its own consultation with DWD officials. Additionally, the fact that the prevailing wage law at issue which may have, according to Plaintiff's allegations, resulted in improper calculation of overtime pay, has been repealed is also illustrative of perceived problems arising out of enforcement of the law.  Regardless of whether this Court believes the issue of whether different kinds of work were performed is better left to be decided by a jury, there are a number of other grounds for granting Defendant's Motion for Decertification.

## II.     The Plaintiff's FLSA Collective Action Class is not So Numerous as to Make Joinder Impracticable.

To satisfy the requirement of numerosity, plaintiff must show "that the putative class is so numerous that 'joinder of all [class] members is impracticable.'" *Young v. Magnequench Int'l, Inc.*, 188 F.R.D. 504, 506 (S.D. Ind. 1999)(quoting Fed R. Civ. P. 23(a)(1)).

Plaintiff's sole FLSA collective action claim is based on an alleged failure of Re-Vi to calculate overtime pay utilizing the straight-time method under § 207(g), and more specifically, that Re-Vi improperly used the straight time method in a situation where it did not establish *bona fide* rates for two different types of work. Plaintiff has not disputed that Re-Vi had an agreement with its employees to calculate overtime at 1.5 times the straight time rate of work performed during the overtime hours.   Rather, it contends that Re-Vi could not rely upon this method when its employees were working on prevailing wage and non-prevailing wage projects during a given week, alleging that the work performed by the employee on the prevailing wage project was not different in kind than the work performed by the employee on the non-prevailing wage project, such that Re-Vi failed to satisfy the requirements of 29 U.S.C. § 207(g)(2).   However, as noted by this Court, plaintiff's contention is limited to this factual scenario (ECF. 27, p. 8).   In other words, it is undisputed that Re-Vi could not have potentially run afoul in its reliance on § 207(g) in calculating overtime on any other occasion other than those in which an employee worked in a given week on both a prevailing wage project and private jobsite.   Because the total number of employees of Re-Vi that worked on a Prevailing Wage Project from November 2014 to the Present is 19 (including the Plaintiff John Kneipp), of which the employees are easily identifiable and their

joinder is not impractical, Collective Action is not an appropriate means of adjudication.  (Nowak. Dec. Exh. D).

The exhibits offered by Re-Vi in support of its Motion to Decertify demonstrate that at most, the putative class members for which plaintiffs are contending there is an actual controversy (individuals who worked on a prevailing wage project and a non-prevailing wage project and were paid for overtime at 1.5 times the lower wage), is 19, inclusive of the Plaintiff. Re-Vi is not conceding that these individuals in fact were aggrieved in anyway, or that their circumstances are sufficiently similar to demonstrate that a collective action is an appropriate method of adjudication.   To the contrary, Re-Vi is subdivided into several different divisions, including maintenance, renovation, construction, excavation and irrigation. Each division performs differing tasks and not all divisions were involved in prevailing wage projects. Additionally, some employees only performed snow removal work and were subject to a single pay rate.  Additionally, certain employees who performed both snow removal and non-snow removal tasks entered into agreements for an augmented snow removal rate.  (Nowak Dec., ¶3).

In addition to the low ceiling in terms of the number of potential plaintiffs in this case, the traditional factors for the court to consider when evaluating impracticability also favor decertification.  Factors typically considered by the court when evaluating impracticability include "the size of the potential class, ease of identifying the potential members and determining their addresses, their geographic dispersion, and whether the individual claims are so small as to inhibit them from pursuing their own claims." *Young v. Magnequench Intern, Inc.*, 188 F.R.D. 504 (S.D. Ind. 1999); *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996).

7

In relation to geographic dispersion, "the more geographically separated the proposed members are, the more joinder becomes impracticable." *Gaspar* 167 F.R.D. 51, 56 (N.D. Ill. 1996). In the present case, the names and addresses of all of Re-Vi's employees were provided to Plaintiff in April of 2018. In terms of geographic scope, all of Re-Vi's employees live within a relatively small geographic area, with most employees (71/139) residing in Wausau, Rothschild, Weston, Schofield and Kronenwetter, Wisconsin. The furthest employee from Wausau is Eric W. Thompson, who lives 90 miles from Wausau, Wisconsin in Seymour, Wisconsin.  None of the Re-Vi's employees lives greater than about an hour and one-half from Wausau, Wisconsin, demonstrating that the geographic scope of this class is narrow and limited to a short radius from Central Wisconsin. While courts have in some instances certified smaller classes due to dispersion across multiple states or a lack of identifying information being possessed by plaintiff, the employees in this case, are within a small region of one state and their address information has been furnished, making identification and joinder of plaintiffs entirely practical. *See Young v. Magnequench,Inc.* 188 F.R.D 504 at 507.  Where the number of potential class members is small as it is here (19 employees who worked on a prevailing wage and were paid two different wage rates during a given week), "an additional showing of difficulty is imperative for [plaintiff] to prevail on his motion [to certify]."*Id.* at 506. While there is no magic number that satisfies numerosity, courts have found classes of 40 adequate, less than 21 inadequate and those classes between vary according to other factors.  *Id.* (citing *Evans v. Evans*, 818 F. Supp. 1215, 1219 (N.D. Ind. 1993)(quoting *Cox v. American Cast Iron Pipe Co.* 784 F.2d 1546,1553 (11th Cir. 1986).  In the present case, even assuming that Plaintiff has provided a sufficient showing that Re-Vi failed to establish bona fide rates outside of the instances where an employee worked on a prevailing wage

project, the total number of employees who were paid on two different wage rates during a given week by Re-Vi is 29.  This number is sufficiently low based on the case law of this jurisdiction, this Court must find compelling reasons why joinder of applicable plaintiffs is impractical. Further, plaintiffs have had a list of all hourly employees who have received two rates of pay during a given workweek since at least September 17,2018.  This list consists of only 28 employees other than Kneipp.

Plaintiff cannot demonstrate that joinder is impracticable where it can readily discern and has had possession of a distinct list of potential employees that is relatively small and geographically limited.

**III.** **Alternatively, at a Minimum, this Court should Stay its Decision on Certification of the Collective Action Pending the Expiration of the Time for Plaintiffs to Opt-In to the Lawsuit.**

While notices were only sent to potential class members on or about September 14, 2018 and the deadline for responses expires on or about November 13, 2018, as of this time defendant is unaware of any further FLSA consent forms being filed other than John Kneipp's.  Certainly, it does not appear that interest in the lawsuit is high at this time.  While this Court may wait to consider the issue of numerosity until after the time period for plaintiffs to opt-in has passed, certainly new plaintiffs have not been flooding into this case and presuming that interest remains low and that Kneipp remains the sole named plaintiff or is accompanied by only a handful of additional plaintiffs, procedural concerns and fairness would not justify the continuation of a collective action. Further, in such a scenario, where no class members have decided to opt-in to the collective action, decertifying the collective action will not impair the plaintiff's rights by allowing the plaintiff or other named plaintiffs to proceed in prosecuting their own claims.

*Espenscheid v. DirectSat USA,LLC,*688 F.3d 872,877 (7th Cir. 2012).  There would be no justification in allowing the collective action to proceed if Kneipp remains alone or among only a small number of opt-in plaintiffs.

**IV.    Re-Vi Appropriately Relied Upon the 207(g) Exemption in Calculating its Employee's Overtime.**

Pursuant to 29 U.S.C. § 207(g)(2) and  29 C.F.R. § 778.419(a),  employers are allowed to compute overtime pay at one and a half times the straight time rate of the work performed during the overtime hours if certain conditions are met.  These conditions are: (1) the employee must have performed two or more kinds of work; (2) the employer must have established a bona fide hourly rate for those different kinds of work; (3) the employee's compensation must be paid pursuant to an agreement or understanding arrived at between the employer and employee in advance of the performance of the work; and (4) the employee's compensation must be computed at rates not less than one and one-half times such rates applicable to the same work when performed during non-overtime hours.

In the present case, plaintiff does not contest, and in fact the named class representative testified that there was an agreement and understanding between Re-Vi and its employees that overtime would be paid at one and one-half times the regular rates applicable to the work performed during overtime hours. (Kneipp Dep. p. 18:7-11).   Additionally, plaintiff does not contend that Re-Vi's normal base rates for snow removal and non-snow removal/landscaping were not agreed upon and established between Re-Vi and its employees.   Instead, plaintiff contends that Re-Vi violated the first two prongs of the exemption on those occasions in which an employee performed work on a prevailing wage jobsite and (allegedly) performed the same

type of work on a non-prevailing wage jobsite.  Accordingly, the list of employees furnished to Plaintiff for purposes of its collective action notice is overly broad as it includes employees who never worked on a prevailing wage project and accordingly were paid only according to two bona fide rates of pay, non-snow removal work and for those employees who had a snow agreement, snow removal work.

Even if Plaintiff were to now raise the issue with whether snow-removal versus non-snow removal rates were bona-fide in a weekly time period, this would constitute a differing inquiry and a different set of employees who may be implicated by this situation.  The legal question under those circumstances would be whether or not the rates established by Re-Vi for purposes of snow removal and non-snow removal work were bona fide (*see* e.g., *Parth v. Pomona Valley Hosp. Med. Ctr.*, 630 F.3d 794, 803 (9th Cir. 2010) as opposed to the inquiry of whether an individual employee performed two or more "different types of work" for purposes of 29 U.S.C. § 207(g), when it performed work on a private project and a prevailing wage project in a given week.  In the former situation, the contested issue would be whether Re-Vi has agreed with the employee to pay it a rate for a certain type of work, that rate was in place for a substantial period of time and that rate was in excess of the minimum wage.  In the latter situation and adopting for purpose of argument Plaintiff's contention concerning the legal interpretation "types of work", the contested issue would instead be a factually intensive determination as to the tasks performed by an employee on private projects and prevailing wage projects in a given week.

Finally, the factually intensive nature of both of these inquiries, and the fact that Re-Vi did not have a uniform application of snow-removal agreements across all of its employees, favor decertification of the plaintiff's claims.

**V.      The Named Plaintiff is not typical of the purported class.**

Rule 23(a)(3) requires "claims or defenses of representative parties [to be] typical of the claims or defenses of the class. . . . "  If the class representatives' claims have "the same essential characteristics" as the class members' claims, then the requirements are satisfied.  *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009)(citation omitted). Although "[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members," the requirement "primarily directs the District Court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Id.* (quoting *De La Fuente v Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983); overruled on other grounds by *Green v Mansour*, 474 U.S. 64 (1985).)

John Kneipp's claims are not typical of a putative class, because John Kneipp has a unique set of circumstances giving rise to his alleged FLSA claim. Kneipp contends that he performed the same type of work on both a prevailing wage project (The Wausau Riverfront Project), and non-prevailing wage projects, particularly landscaping tasks.  Accordingly, Mr. Kneipp contends that differing pay rates do not constitute bona fide rates allowing Re-Vi to compute overtime at time and one-half the lower regular rate for work performed during overtime hours.  Mr. Kneipp was one of 5-10 employees who were hired into and assigned to the maintenance division under Jed Hagemeister.  The maintenance division was responsible for lawn and bed maintenance tasks including but not limited to: mowing and spreading fertilizer and herbicide. (Hagemeister Dec. ¶2).  Mr. Kneipp was certified to spread fertilizer and his official title was that of fertilizer technician. Mr. Kneipp was the only employee of the maintenance division to work on a prevailing wage project.   However, contrary to his assertions, Mr. Kneipp did not perform

equivalent work both on and off the prevailing wage project.  Mr. Kneipp spread fertilizer and herbicide on non-prevailing wage projects and worked on the Wausau Riverfront project only in the capacity of a general laborer.  Mr. Kneipp testified in his deposition that he used a fertilizer machine to spread grass seed on the Wausau Riverfront project.   Additionally, Mr. Kneipp had prior employment experience in the application of fertilizer having worked for a company called NatureScape. (Kneipp Depo, p. 203:1-16)**.**  Mr. Kneipp is not typical of other hourly employees as he is the only employee from the maintenance division to work on a prevailing wage project.  Additionally, Mr. Kneipp is an employee who is certified as a fertilizer tech, the only such employee from all of Re-Vi Design.  Accordingly, his unique circumstances are again distinct from other potential members of the proposed class.

### VI.    The Named Plaintiff is not Adequate to Represent the Interests of the Class.

The named plaintiff John Kneipp is not an adequate representative of the Class. It is undisputed that John Kneipp has, within the last 10 years, been convicted of three felonies for acts of dishonesty, namely three counts of Burglary of which the defendant was convicted in mid-2010.  (Ellison Dec., Ex. B) While this Court will have to undergo a balancing test in relation to whether evidence related to these convictions may be admitted, the factors typically relied upon in making such a determination and the facts of this case support its use.[1]  *See* Fed. R. Evid. 609. These crimes relate to very dishonest behavior, breaking into another person's home with the intent to steal their possessions.

---

[1] Re-Vi understands that it will need to file a motion in limine, and intends to do so, concerning the use of Mr. Kneipp's prior criminal history.  This information is only offered at this point in anticipation of said motion.  However, of note Mr. Kneipp was not honest in disclosing the full extent of his criminal history to counsel during his deposition such that Re-Vi believes it should be entitled to introduce evidence beyond the time limitations of Rule 609 for purposes of impeachment. (Kneipp Deposition, see generally page 11)

In this case, honesty of Mr. Kneipp is an incredibly important. Re-Vi's timekeeping system left a great amount of responsibility to its employees to accurately record the time worked, time taken for lunch and travel and the type of work performed. Despite a significant number of errors noted in Mr. Kneipp's time records and a plethora of occasions in which Mr. Kneipp testified that he intended to take a 30 minute lunch by timing his time off, but instead took a 29 minute lunch, nonetheless felt that his own error in tracking his time was deserving of compensation and ruled out any possibility of error concerning the time actually recorded in his time records. (Kneipp Depo., see generally p.135-136)  While time taken for lunch is not an issue for purposes of Kneipp's FLSA collective action, the nature of his testimony is illustrative of the importance of his credibility to his claims. While Kneipp may argue that any error is made by Kneipp should have been caught by Re-Vi supervisors performing a review of his time records for payroll, much of this information is not capable of review unless blatantly erroneous or cost prohibitive practices, such as supervising every minute of each employee's day were undertaken.

Having Mr. Kneipp serve as the class representative would potentially prejudice the class as the finder of fact may impute Mr. Kneipp's history of dishonesty to the claims of the class as a whole. Further, should any additional employees opt-in, it is doubtful that they would do so knowingly and informed of the nature of Mr. Kneipp's criminal past, which may be presented to the finder of fact and its potential impacts upon the class as a whole. To the contrary if certification were not granted, each class member would not be prejudiced by Mr. Kneipp's history of dishonesty casting a doubt as to the veracity of their claims.

## CONCLUSION

For all the foregoing reasons, Defendant's Motion for Decertification should be granted.

ELLISON & DAVID, LLP

Dated: September 28, 2018                 /s/ Keith F. Ellison
                                          Keith F. Ellison (State Bar No. 1017417)
                                           Kurt F. Ellison (State Bar No. 1089940)
                                          Attorneys for Defendant
                                          630 Fourth Street
                                          P.O. Box 1144
                                          Wausau, WI 54402-1144
                                          (715) 845-1151 / 845-1167 (FAX)
                                          email: kfe@wedlaw.net